**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Selso Randy Orona,<br>Movant/Defendant<br><br>-vs-<br><br>United States of America,<br>Respondent/Plaintiff. | CV-13-1625-PHX-SRB (JFM)<br>CR-11-0856-PHX-SRB<br><br>**Report & Recommendation**<br>**on Motion To Vacate, Set Aside Or**<br>**Correct Sentence**<br>**and Motion for Certificate of**<br>**Appealability** |

**I. MATTERS UNDER CONSIDERATION**

Movant, following his conviction in the United States District Court for the District of Arizona, filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on August 8, 2013 (Doc. 1), supplemented by pages 2 to 7 of his Affidavit filed September 4, 2013 (Doc. 5).  On November 25, 2013, Respondent filed its Response (Doc. 9).   Movant filed his Amended Reply on February 18, 2014 (Doc. 18).

In the interim, Movant filed a Motion for Certificate of Appealability on December 20, 2013 (Doc. 12).  Respondent filed its Response on February 11, 2014 (Doc. 17), and Movant filed his Reply on February 26, 2014 (Doc. 19).

The Movant's Motion to Vacate (Doc. 1) and Motion for Certificate of Appealability (Doc. 12) are now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases , Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

/ /

1

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

From 1978 through 2007, Movant was convicted in the state courts of Arizona in five separate cases on charges of burglary, attempted aggravated assault, aggravated assault, possession of drug paraphernalia, and aggravated assault.  On March 12, 2010, Movant was found in possession of a .22 caliber cartridge.  (CR Doc. 28, Superseding Indictment.)  (The docket in the underlying criminal case, CR-11-0856-PHX-SRB, is referenced herein as "CR Doc. ___.")

The possession was discovered during a search while Movant was on probation with the State of Arizona.  He was charged by state authorities with violating his probation and being a felon in possession, based upon a weapon found at the same time.  Subsequent testing revealed that the firearm would not fire, and state law did not prohibit a felon's possession of ammunition.  Accordingly, the felon in possession charge was dismissed and Movant entered into a plea agreement with state authorities and plead guilty to violating his state probation.  (Exhibit A, R.T. 1/4/12 at 6-8.)

### B. PROCEEDINGS AT TRIAL

On May 3, 2011, Movant was indicted in this Court on one count of Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2), with a forfeiture allegation seeking forfeiture of the ammunition and a "homemade 'firearm,' commonly referred to as a zip gun."  (CR Doc. 1, Indictment.)  Counsel was appointed.  (CR Doc. 5, M.E. 9/23/11.)  A Superseding Indictment (CR Doc. 28) was filed on December 27, 2011, expanding the allegations of Movant's prior convictions.

Movant filed *pro se* a Motion for Change of Attorney (CR Doc. 21), a Motion for New Counsel (CR Doc. 24), and a Motion to Dismiss Indictment (CR Doc. 40, 41).  These *pro se*  motions were denied.  (CR Doc. 46, M.E. 1/4/12.)

The Court limited the government's proof on prior convictions as predicate felonies to the 1982 attempted aggravated assault and the 1994 and 2007 convictions on

aggravated assault.  (Exhibit A, R.T. 1/4/12 at 18.)   The Court opined, however, that the ten year time limitations in the Federal Rules of Evidence might limit the use of the older convictions for purposes of impeachment in the event Movant chose to testify at trial. (*Id.* at 18-19.)

Movant proceeded to a jury trial on January 10, 2012, and was found guilty on January 11, 2012.  (CR Doc. 53, M.E. 1/10/12; CR Doc. 57, M.E.1/11/12.)

Movant filed *pro se* an additional Motion to Dismiss (CR Doc. 54), a Motion to Dismiss for Fast and Speedy Trial (CR Doc. 64), a Motion to Suppress Evidence (CR Doc. 65), a Motion to Dismiss Priors (CR Doc. 77).  Each were denied as improperly filed *pro se* while represented.  (CR Doc. 78, Order 2/28/12.)

Movant filed *pro se* a Motion for Reconsideration (CR Doc. 79), a second Motion for Reconsideration (CR Doc. 80), and a Motion to Dismiss for Multiplicity (CR Doc. 81).  The latter motion was founded upon the earlier plea agreement and conviction in state court proceedings.  (*Id.*)  Each of these motions were denied.  (CR Doc. 82, Order 3/26/12; and CR Doc. 83, Order 3/26/12.)

Movant appeared for sentencing on April 2, 2012, and was sentenced to 180 months in prison.  (CR Doc. 85, M.E. 4/2/12; CR Doc. 88, Judgment.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Movant filed, through counsel, a direct appeal.  Counsel filed a brief evidencing an inability to find an issue for appeal, and seeking to withdraw.  Movant filed a *pro se* supplemental brief.  The Ninth Circuit found no arguable grounds for relief, granted the motion to withdraw, denied a motion for substitute counsel, and affirmed Movant's conviction and sentence.  (CR Doc. 103, Mem. Dec. 4/23/13.)

## D.  PRESENT MOTION TO VACATE

**Motion** - Movant commenced the current case by filing his Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255  on August 8, 2013 (Doc. 1).

Movant's Motion asserts the following four grounds for relief:

(1) ineffective assistance of counsel;

(2) he is seriously mentally ill but an "18 U.S.C. § 4241 was never ordered";

(3) an administrative welfare search transformed into an unlawful investigative search;

(4) state law protected his rights as a citizen and does not criminalize possession of ammunition by a felon.

The Court ordered his Motion supplemented by his Affidavit attached to his motion to supplement (Doc. 5 at 2-7).  (Order 10/1/13 at 2, 3.)

**Response** - On November 25, 2013, Respondent filed its Response (Doc. 9). Respondent concedes the motion is timely, construes all of Movant's claims as related to his ineffectiveness claims, and asserts that counsel was effective because: (1) prior felony convictions are relevant for conviction and sentencing and 18 U.S.C. § 922 does not limit the age of predicate felonies, and Movant can only attack the validity of those convictions in this case on the basis of a denial of counsel; (2) federal, not state, law controls this conviction, and Movant violated that federal law; (3) Movant's mental illness did not negate the required intent nor render him incompetent to stand trial; and (4) the seizure of evidence was lawful.  Movants do not separately address the merits of the substantive claims in Grounds 2, 3, and 4.

**Reply** – Movant filed his original Reply (Doc. 10) on December 2, 2013.  He then proceeded to file serial amendments (Doc. 11, 13, 14).  The latter was construed as a motion to amend, and was denied without prejudice.  Movant was granted leave to file an amended reply, "which should contain all of Movant's arguments in reply to the Response (Doc. 9)."  (Order 2/4/14, Doc. 15 at 1-2.)

Movant filed his Amended Reply on February 18, 2014 (Doc.  18), arguing the merits of his claims.

**Motion for Certificate of Appealability and Interlocutory Appeal** - In the interim, Movant filed a Motion for Certificate of Appealability on December 20, 2013

4

(Doc. 12), seeking to argue his mental capacity, warrantless search, and the improper reliance on his prior convictions.

Movant filed a "Notice of Appeal" on February 6, 2014 (Doc. 16), seeking to appeal "the judgment" entered in this Court on February 3, 2014 (the date of Movant's signature).

The Court directed Respondent to respond to the motion. (Order 2/4/14, Doc. 15 at 2.) Respondent filed its Response on February 11, 2014 (Doc. 17), arguing that no appealable decision has been issued in this Court, and thus the request is premature, and that Movant has failed to make the showing necessary under 28 U.S.C. § 2253 for a certificate of appealability.

Movant filed his Reply on February 26, 2014 (Doc. 19), arguing various constitutional violations in the course of his prosecution.

### III. APPLICATION OF LAW TO FACTS

### A. MOTION FOR CERTIFICATE OF APPEALABILITY AND APPEAL

Movant has requested a certificate of appealability (Doc. 12), and a Notice of Interlocutory Appeal (Doc. 16).

**Motion for Certificate of Appealability** - Certificates from the district court concerning appealability are provided for in two applicable instances. The first is under 28 U.S.C. § 2253, which requires such a certificate to be entitled to appeal the judgment on a habeas petition or motion to vacate. However, as noted by Respondents, no judgment or other final order has been entered in this case. Accordingly, a request for a certificate of appealability under this section is premature. (As discussed hereinafter, such a certificate may be appropriate upon issuance of this Court's judgment.)

Secondly, a certification is required under 28 U.S.C. § 1292(b) to seek review on an interlocutory order other than one "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions," concerning receiverships, or in admiralty cases. 28 U.S.C. § 1292(a). None of those circumstances

1    apply in this case.

2         Moreover, the instances for interlocutory appeals outside those circumstances are

3    limited to an order which "involves a controlling question of law as to which there is

4    substantial ground for difference of opinion and that an immediate appeal from the order

5    may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

6    Here, Petitioner's motion does not, however, seek review of "an order" of this Court, but

7    in effect seeks to have the Ninth Circuit review various claims concerning his conviction

8    directly.

9         Indeed, his "Notice of Appeal" (Doc.16) asserts that he seeks to appeal "the

10   judgment" entered in this Court on February 3, 2014 (the date of Movant's signature).

11   However, no judgment nor order of any kind was entered on February 3, 2014.

12        The Court did file an order on February 4, 2013 (Doc. 15), but that Order was

13   limited to routine procedural issues, *i.e.* setting a deadline for an amended reply, denying

14   a motion to amend without prejudice, requiring a response to the motion for a certificate

15   of appealability.  The substance of Movant's Motion for Certificate of Appealability

16   makes clear that the issues he seeks review of by the Ninth Circuit do not involve those

17   routine matters.  Moreover, such order does not involve a controlling question of law,

18   such that a certification of the matter for interlocutory review would be appropriate.

19        Accordingly, Movant's Motion for Certificate of Appealability must be denied.

20        **Effect of Interlocutory Appeal** – Although Movant has filed a Notice of

21   Interlocutory Appeal, this Court is not divested of jurisdiction to proceed with resolving

22   the Motion to Vacate.  "The case, except for the hearing on the appeal from the

23   interlocutory order, is to proceed in the lower court as though no such appeal had been

24   taken, unless otherwise specially ordered." *Ex parte National Enameling & Stamping

25   Co.*, 201 U.S. 156, 162 (1906).  Because there is no order from which Movant has taken

26   an interlocutory appeal, and none which would support such an appeal, then absent an

27   order from the Ninth Circuit, this case should proceed to and including judgment. *See* 16

28   Fed. Prac. & Proc. Juris. § 3921.2 (Interlocutory Injunction Appeals—Trial Court Action

1  Pending Appeal) (2d ed.).

2

3  **B. EXHAUSTION**

4        It appears to the undersigned that the claims raised in Grounds Two, Three and

5  Four of the Petition were properly raisable on direct appeal and thus might be

6  procedurally defaulted. *See U.S. v. Ratigan*, 351 F.3d 957, 962 (9ᵗʰ Cir. 2003) ("A § 2255

7  movant procedurally defaults his claims by not raising them on direct appeal and not

8  showing cause and prejudice or actual innocence in response to the default."). (In

9  contrast, claims of ineffective assistance such as that asserted in Ground One are

10  properly raised for the first time in a motion to vacate. *Massaro v. U.S.*, 538 U.S. 500,

11  509 (2003).)

12        However, Respondent does not address this issue. "Ordinarily, the government's

13  failure to raise the petitioner's procedural default at the appropriate time waives the

14  defense." *U.S. v. Barron*, 172 F.3d 1153, 1156 (9ᵗʰ Cir. 1999).[1]   Accordingly, the

15  undersigned deems Respondent's silence on the issue to be a waiver of any defense of

16  procedural default.

17

18  **C. MERITS OF GROUND ONE – INEFFECTIVE ASSISTANCE**

19        For his Ground One, Movant argues that trial counsel was ineffective for: (1)

20  failing to present a defense; (2) failing to object to the use of stale priors; (3) failing to

21  seek a competency evaluation under 18 U.S.C. § 4241; (4) failing to move to suppress

22  evidence against Movant; and (5) failing to argue Arizona law.

23        **Standard for Ineffective Assistance** - Generally, claims of ineffective assistance

24  of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In

25  order to prevail on such a claim, petitioner must show:  (1) deficient performance -

26  counsel's representation fell below the objective standard for reasonableness; and (2)

27  ───────────────
28  [1]  It is true that 28 U.S.C. § 2254(b)(3) requires explicit waiver of the exhaustion requirement in *state* habeas proceedings.  No comparable limitation is provided in 28 U.S.C. § 2255 for federal prisoners.

7

prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687 88, 694.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id*. at 697.

In determining whether counsel performed deficiently, the court must focus on whether the attorney's performance was appropriate under the circumstances existing at the time, unaided by hindsight.  *See Strickland*, 466 U.S. at 690.  Moreover, there is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy.  *United States v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995).  The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices."  *United States v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).  The court need not determine the actual reason for an attorney's actions, as long as the act falls within the range of reasonable representation. *Morris v. California*, 966 F.2d 448, 456-457 (9th Cir. 1991).

It is clear that the failure to take futile action can never be deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996).  "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."  *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

**Failure to Present Defense** –  Movant argues that when he refused to accept  a plea offer, counsel "wouldn't argue anything in my defense aggressively."  (Motion, Doc. 1 at 5.)  The Motion does not elaborate on what arguments should have been raised (beyond those discussed hereinafter).  In his Reply, Movant argues that counsel failed to pursue a defense of double jeopardy, and the presence of other people who could have possessed the ammunition. (Doc. 18 at 2.)

Conclusory Allegations – A claim of failure to present a viable defense cannot be asserted by conclusory allegations, but must be supported by a showing that a specific

viable defense existed.  *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989). Thus, for example, a defendant cannot satisfy the *Strickland* standard by "vague and conclusory allegations that some unspecified and speculative testimony might have established his defense."  *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991).

Apart from the references to his double jeopardy claim and potential other possessors of the ammunition, this claim is based on conclusory allegations and is without merit.

<u>Double Jeopardy Claim</u> – Presumably, in raising an assertion of a double jeopardy defense, Movant refers to the grounds he raised in his *pro se* Motion to Dismiss for Multiplicity (CR Doc. 81).  However, the double jeopardy clause does not preclude prosecution for the same conduct by different authorities, *i.e.* the state and federal governments.  "Under the dual sovereignty doctrine, successive prosecutions by separate sovereigns for crimes arising out of the same acts are not barred by the Double Jeopardy Clause." *U.S. v. Traylor*, 978 F.2d 1131, 1132 (9th Cir. 1992).

Thus, any effort to assert a defense on this basis would have been futile, and does not support a claim of ineffective assistance.  *Baumann*, 692 F.2d at  572.

<u>Other Possessors</u> – Movant argues that counsel failed to argue the presence of other people at the time that the ammunition was discovered.  The trial transcript reflects that a 16 year old female was found in the bedroom of the apartment.  (Exhibit B, R.T. Test. of Fred Wilhalme at 118.)     The zip gun and ammunition were found wedged in the couch in the living room.  (*Id.* at 119-120.)

 "Where, as here, a residence is jointly occupied, the mere fact that contraband is discovered at the residence will not, without more, provide evidence sufficient to support a conviction based on constructive possession against any of the occupants." *U.S. v. Reese*, 775 F.2d 1066, 1073 (9th Cir. 1985).  Here, however, there was more than sufficient evidence to establish Movant's possession.  For example, Movant admitted to the officers that he had made the zip gun, which he described as "wood and tubing" with a laser pointer on top."  (Exhibit B, R.T. Test. of Fred Wilhalme at 120-121.)  One round

9

of ammunition was found in the tube and the others were taped to the outside of the zip gun.  (*Id.* at 120.)   On redirect, the probation officer testified that Movant had not asserted that the zip gun or ammunition belonged to someone else, and referred to the zip gun as his laser pointer.  (*Id.* at 132.)

Nonetheless, counsel cross-examined the probation officer in an attempt to establish that he did not know if the apartment was leased by Movant, that others had been reported in the home, that they may or may not have been the 16 year old found in the home, and that a pill bottle for a prescription to someone other than Movant was found.  (Exhibit B, R.T. Test. of Fred Wilhalme at 124-126.)

Movant does not suggest what else trial counsel should have done.  Movant fails to proffer any evidence of other possible possessors of the ammunition, nor counsel's knowledge of such possessors.  Movant does not show that additional investigation would have yielded the true possessor.  Nor does he suggest any way for counsel to have avoided the effect of his admission with regard to the zip gun to which the ammunition was taped.

Movant fails to show that trial counsel performed deficiently with respect to his possession of the ammunition.

**<u>Use of Stale Priors</u>** – Movant complains that a "prior for the purpose of ACCA can go back ten years" and that counsel failed to object to the use of older priors. Respondent counters that the priors necessary to Movant's conviction were less than ten years old, and that in an event the ACCA[2] does not impose a time limitation on the relevant priors.  Further, Movant argues that his rights were restored under Ariz. Rev. Stat. § 13-906 and 13-912, and thus he did not qualify under the ACCA.  (Supp. Mot.,

---

[2] The substance of 18 U.S.C. § 922(g) was originally adopted as part of the  Omnibus Crime Control and Safe Streets Act of 1968, and went through a series of renumberings, repeals, reinstatements, and modifications, including most notably those of the Armed Career Criminal Act of 1984 which provided for the enhanced (15 year) sentencing for felons with three prior convictions.  *See* Rafaloff, *The Armed Career Criminal Act: Sentence Enhancement Statte or New Offense*, 56 Fordham L. Rev. 1085 (1988). Nonetheless, it continues to be referenced by its intermediate incarnation as part of the ACCA.

Doc. 5 at 6.)

Movant's argument based upon staleness apparently stems from this Court's discussion at the pretrial conference about the limitations on usage of stale convictions for purposes of impeachment.  (Exhibit A, R.T. 1/4/12 at 14-15.)  However, the usage of priors for impeachment is a separate issue from their usage to establish Petitioner's prior convictions as a predicates to the offense of being a felon in possession.

As argued by Respondents, the ACCA does not have a time limitation, and convictions of any age may be used to establish the predicate felony conviction.  *U.S. v. Keesee*, 358 F.3d 1217, 1221 (9th Cir. 2004) ("The only time limitation supported by the language of the Armed Career Criminal Act is that the predicate convictions be 'previous.'").  Indeed, the *Keesee* court rejected the same extrapolation that Petitioner now attempts, *e.g.* to import the 10 year limitation under Federal Rule of Evidence 609(b) (impeachment with convictions).  "Federal Rule of Evidence 609(b) does not purport to limit, and does not have the effect of limiting, the time period for which prior crimes may be considered under the Armed Career Criminal Act."  358 F.3d at 1221.

Thus, any objection by counsel would have been futile, and Movant has failed to show that trial counsel performed deficiently in this regard.

**<u>No Competency Evaluation</u>** – Movant complains that he has been diagnosed with "SMI" (serious mental illness), but counsel failed to seek an evaluation under 18 U.S.C. § 4241 (Determination of mental competency to stand trial).  (Motion Doc. 1 at 5.)  In his Ground Two, he argues that he was diagnosed as "SMI" in 1993, and that he was medicated throughout the trial.  (Motion, Doc. 1 at 6.)  In his Amended Reply, Movant points out that counsel sought extensions of time to study Movant's SMI medical records, but did not seek a formal evaluation.  Movant argues that counsel was not competent to ascertain whether Movant was competent, and should have sought an evaluation.

Movant fails to proffer anything beyond his bare assertion of a diagnosis with mental illness and his receiving medication that would have supported an effort to have

11

Movant declared incompetent to stand trial.    The test for ascertaining whether a

defendant is competent to stand trial, as enunciated by the Supreme Court, is:

> whether (the accused) has sufficient present ability to consult with
> his lawyer with a reasonable degree of rational understanding—and
> whether he has a rational as well as factual understanding of the
> proceedings against him.

*Dusky v. United States*, 362 U.S. 402 (1960).

> In applying this test the courts have been careful to distinguish it
> from the test or standard to be used in determining criminal
> responsibility. Thus, even a finding of severe mental illness,
> sufficient to exculpate the defendant if found to exist at the time of
> the commission of the offense, would not necessarily render the
> defendant incompetent to stand trial.

*U.S. v. Hearst*, 412 F.Supp. 858, 859 (D.C.Cal. 1975) (citations omitted).

Here, Movant proffers nothing to show that he was unable to consult with counsel

or lacked a rational and factual understanding of the proceedings against him.   He

proffers nothing to suggest that his mental illness, whatever it might be, would support a

finding of incompetence to stand trial.   The bare fact of his receiving medication does

not establish his incompetence. Indeed, it might be equally presumed that the medication

enhanced his competence, rather than denigrating it.

Respondents point out that, despite his diagnosis with "SMI" in 1993, he had

repeatedly been competent to stand trial at his intervening prosecutions.   Further, as

Respondents point out, Movant repeatedly demonstrated his understanding of the

proceedings and charges against him, if perhaps not his mastery of the legal precedents,

through his various *pro se* motions seeking to assert various legal defenses and

objections.

Moreover, counsel did not overlook Movant's mental illness. He repeatedly

sought extensions for the purposes of obtaining and acting on Movant's mental health

records.   (*See e.g.* Second Motion to Continue, CR Doc. 14 at 1; Third Motion to

Continue, CR Doc. 17.)   Movant fails to establish that counsel performed deficiently by

failing to do more.

**No Motion to Suppress** - Movant asserts that the search of his apartment was

improper because the search was a "welfare check."  Movant complains in his related Ground Three that no search warrant was obtained, and probable cause was not shown. (Motion, Doc. 1 at 7.)

In *Griffin v. Wisconsin*, 483 U.S. 868 (1987), the Supreme Court observed that "[a]lthough we usually require that a search be undertaken only pursuant to a warrant (and thus supported by probable cause, as the Constitution says warrants must be), we have permitted exceptions when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'"  *Id.* at 873 (internal citations omitted).  A probationer's status as a convicted criminal on release under supervision of the state may provide such special circumstances.  Thus, "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *U.S. v. Knights*, 534 U.S. 112, 121 (2001).  Thus, a reasonable suspicion that Movant, a convicted felon, possessed a firearm would have justified the search of his home, without a warrant and without the more demanding finding of probable cause.

Movant points to no evidence to support the contention that the search was conducted merely as a welfare check.  The only apparent support in the record is the report of the assisting Phoenix Police Department officer that he was being dispatched to assist probation officers in "doing a check welfare."  (Amend. Reply, Doc. 18, Exhibit E.)  However, that same report reflects that the officer "was advised that [the probation officer's] main goal for the search of AP1 Selso's home was to look for a firearm," noting that "API1 Selso is a convicted felon and is prohibited to be in possession of a firearm."  (*Id.*)  Moreover, at the pretrial conference, the prosecution represented that the search was based upon the belief that Movant had a weapon, based upon previously finding ammunition there.  (Exhibit A, R.T. 1/4/12 at 30.)  That was sufficient reasonable suspicion to support the search.

Moreover, Officer Wilhalme testified at trial that the zip gun and ammunition

were discovered during a search of the couch on which Petitioner and the female were to be seated to look for weapons.

> Q        Now, tell us what happened when you started the search.
> A        After the officers had cleared the apartment, they asked us if we could sit the defendant and the juvenile on the couch in the living room. Prior to letting them sit, we do a search of the couch to make sure there was nothing there that could harm us. And as they started to do the search and pulled the cushions apart, we found an object that we took into possession.

(Exhibit B, R.T. Test. of Wilhalme at 119.)  When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, the officer may conduct a patdown search to determine whether the person is in fact carrying a weapon.  *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993).  The information that Movant had possessed ammunition in the home would create a reasonable suspicion that he was armed and presently dangerous.  With that reasonable suspicion, "the police officers had a right" not only to pat down Movant, but also "to examine a hiding-place where a weapon could be concealed that the suspect could reach."  *U.S. v. Garcia*, 909 F.2d 389, 392 (9th Cir. 1990) (citing *Michigan v. Long*, 436 U.S. 1032, 1049-1052 (1983)).  The cushions of the couch on which Movant was to be seated was just such a hiding place.

Movant provides nothing on which trial counsel could have based a viable motion to suppress, and thus his failure to file such a motion does not constitute deficient performance.

**Failure to Rely on Arizona Law** – Finally, Movant argues that trial counsel failed to argue that "Arizona law has no provision for felon in possession of ammunition." (Motion, Doc. 1 at 5.)  However, Movant was not being prosecuted under Arizona law, but under 18 U.S.C. § 922(g) which plainly prohibits a felon from possessing "any firearm or ammunition."  The courts have repeatedly upheld the federal felon-in-possession statutes against a claim that they exceeded federal authority.  *See e.g. U.S. v. Alderman*, 565 F.3d 641, 645 (9th Cir. 2009) (detailing cases).  Thus, any argument raised on the inapplicability of Arizona law would have been without merit

14

and futile, and therefore cannot establish that trial counsel performed deficiently.

In his Amended Reply on Ground Four, Movant also argues that Arizona had restored his civil rights. The federal statute's definition of felony ("crime punishable by imprisonment for a term exceeding one year") explicitly excludes convictions for which a person "has had civil rights restored." 18 U.S.C. § 921(a)(20). However, Movant proffers no evidence that his rights had been restored by the State of Arizona. Apart from those with only one felony conviction, *see* Ariz. Rev. Stat. § 13-912, a felon must make application to have their civil rights restored, and the sentencing judge must grant the restoration. *See* Ariz. Rev. Stat. §§ 13-905 and 13-906. Having been convicted of multiple felonies, Movant was ineligible for automatic restoration under Ariz. Rev. Stat. § 13-912.[3] Movant presents no evidence of an application or grant of restoration as a multiple felon, nor does he even allege that one existed. Accordingly, Movant has failed to establish that trial counsel was ineffective for failing to assert a restoration of civil rights.

**Summary** – Based upon the foregoing, Movant has failed to establish that trial counsel was ineffective, and His Ground One must be denied.

# D.  MERITS OF GROUND TWO – MENTAL ILLNESS

In his Ground Two, Movant argues that he is seriously mentally ill but an "18 U.S.C. § 4241 was never ordered." (Motion, Doc. 1 at 6.) He argues he was diagnosed as SMI in 1993, was medicated throughout the proceedings, no competency exam was ordered in this proceeding, and he must be deemed incompetent in any proceeding since his 1993 diagnoses.

For the reasons discussed hereinabove with regard to the related claim of ineffective assistance of trial counsel, Movant's naked allegations of an SMI diagnosis

---

[3] Arguably, Movant's first conviction (a burglary conviction in 1978) might have been subject to automatic restoration of his civil rights under Ariz. Rev. Stat. § 13-912. His conviction and sentence here, however, were based on his convictions for attempted aggravated assault and aggravated assault in 1982, 1994, and 2007. (CR Doc. 72, Verdict.)

1   and being medicated does not establish that he was incompetent to stand trial in this

2   proceeding.

3         Moreover, with regard to his prior convictions, a conviction remains a conviction

4   despite any constitutional infirmities for purposes of both: (1) establishing the elements

5   of being a felon in possession under 18 U.S.C. § 922, *see U.S. v. Marks*, 379 F.3d 1114

6   (9th Cir. 2004); and (2) sentencing (except where rendered without counsel), *see Custis v.*

7   *U.S.*, 511 U.S. 485 (1994).   Thus, even if it were assumed that Movant was actually

8   incompetent at the time of his earlier convictions, that would not provide him relief in

9   these proceedings.

10        Thus Movant's Ground Two is without merit, and must be denied.

11

12   **E.  MERITS OF GROUND THREE – ILLEGAL SEARCH**

13        For his Ground Three, Movant argues that his conviction should be set aside

14   because it resulted from an illegal search when an administrative welfare search

15   transformed into an unlawful investigative search.

16        For the reasons discussed hereinabove in connection with the related claim of

17   ineffective assistance of counsel, Movant has failed to establish that the search was

18   illegal.

19        Moreover, any such claim is not cognizable in this action.

20        Such a claim would be based upon the trial court's failure to enforce the

21   exclusionary rule, which normally precludes the introduction of evidence obtained from

22   an illegal search.   But, the rule is not applicable here.   "Exclusion is 'not a personal

23   constitutional right,' nor is it designed to 'redress the injury' occasioned by an

24   unconstitutional search. The rule's sole purpose, we have repeatedly held, is to deter

25   future Fourth Amendment violations."   *Davis v. U.S.*, 131 S.Ct. 2419, 2426 (2011). In

26   *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court recognized that habeas

27   proceedings are so far removed from the offending conduct that any deterrent effect is

28   outweighed by the societal cost of ignoring reliable, trustworthy evidence and the

16

judicial burden of litigating collateral issues.  Thus, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. In *Tisnado v. U.S.*, 547 F.2d 452 (9th Cir. 1976), the Ninth Circuit held this limitation on the exclusionary rule applied equally to a motion to vacate pursuant to 28 U.S.C. § 2255. "Thus, according to *Stone v. Powell*, a federal court may not grant either § 2254 or § 2255 habeas corpus relief on the basis that evidence obtained in an unconstitutional search or seizure was introduced, respectively, at a state or federal trial where the defendant was provided an opportunity to litigate fully and fairly his fourth amendment claim before petitioning the federal court for collateral relief." *Tisnado*, 547 F.2d at 456. *See also U.S. v. Hearst* , 638 F.2d 1190, 1196 (9th Cir. 1980).  Movant makes no suggestion that he was prevented from moving to suppress the evidence resulting from the search, merely that he (or his counsel) failed to do so.

Accordingly, this claim is without merit and must be denied.


**F.  MERITS OF GROUND FOUR – ACTUAL INNOCENCE**

For Ground Four of his Motion, Movant argues that state law protected his rights as a citizen, Arizona law did not criminalize possession of ammunition by a felon, and his civil rights had been restored under Arizona law.  (Motion, Doc. 1 at 8.)

As discussed hereinabove in connection with the related claim of ineffective assistance, the lack of an Arizona prohibition on felons possessing ammunition did not preclude Movant's conviction under the federal prohibition, and Movant has failed to establish that his civil rights had been formally restored, or that they were automatically restored under Arizona law.

Accordingly, Movant's Ground Four is without merit and must be denied

//

//

17

## G.  SUMMARY RE MOTION TO VACATE

Based upon the foregoing, the undersigned concludes that Movant's four grounds for relief are without merit.  Accordingly, the Motion to Vacate, Set Aside or Correct Sentence must be denied.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2255 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Motion is brought pursuant to 28 U.S.C. § 2255, and challenges detention pursuant to a federal criminal judgment.  The recommendations if accepted will result in Movant's Motion being resolved adversely to Movant.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on the merits. Under the reasoning set forth herein, the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Motion to Vacate, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed August 9, 2013 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Movant's Motion for Certificate of Appealability, filed December 20, 2013 (Doc. 12) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 10, Rules Governing Section 2255 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's

right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: March 19, 2014

James F. Metcalf
United States Magistrate Judge

13-1625r RR 14 03 10 on HC.docx

20